First case of the day is People v. Francis. For the appellant is Amanda Horner and for the appellee, Mr. Manchin. You may proceed. May it please the court, my name is Amanda Horner and I represent Kayla Francis. Unless this court has any questions, Kayla will confine her arguments today to issues number 1 and 2 from her briefs. Your Honors, essentially this is a case about a 16-year-old girl who entered a guilty plea in both juvenile court with an attached adult sentence. A 16-year-old who had counsel that was suffering from a conflict of interest and who was also ineffective. Even more importantly, this was a guilty plea where no one really anticipated that she would be required to serve the adult portion of the sentence, and in fact she almost didn't. Her probation was revoked three months before she reached the five-year term of her sentence. And at this point, Kayla would respectfully request that this court vacate that guilty plea where her sentence is void, where she received illegally low sentences on three of the four counts in the fully negotiated guilty plea. Hasn't she already served those aggravated battery sentences? Well, the adult portion of her sentence was 180 days for all three of those, and none of the sentences will be discharged until she is discharged from DOC. So, I mean, she's been in DOC for some time, but those charges have not been discharged at this point, Your Honor. But she has served the 180 days, correct? She has served, she has credit for time served from pretrial, and then, yes, she has been in DOC for, I believe it's approximately two years, Your Honor. First, Kayla entered a fully negotiated guilty plea. There were four counts. Three of those were for aggravated battery, and the fourth count was for involuntary manslaughter of an unborn child. Of course, three of those were aggravated batteries, which are Class III felonies. And those have a minimum term of imprisonment of two years. Here, the trial court sentenced her to 180 days. Now, the Illinois Supreme Court has made clear in People v. White that where the trial court enters a judgment that it's not statutorily authorized to enter because it's illegally low, that that judgment is void. So here, Kayla's fully negotiated, the sentence for the aggravated batteries are void, Your Honor, and because it's a fully negotiated guilty plea, the only remedy is to vacate that guilty plea. People v. White is instructive in this matter. In People v. White, a defendant was not given a firearm enhancement, but was instead just sentenced as a Class X felon. And the Supreme Court found that the trial court did not have the authority to enter that sentence because it did not include the mandatory add-on. And therefore, they vacated the fully negotiated guilty plea, finding that that was the only remedy because the judgment was void. Here, those same facts apply. Kayla was sentenced to a Class III felony for 180 days when the minimum should have been two years. The trial court did not have the authority to enter that, and therefore, the sentence is void. Now, the Illinois Supreme Court recently came out with a case called People v. Donaldson that also talks about the remedies for guilty pleas. But Donaldson is inapplicable here for several reasons. In Donaldson, the defendant had three convictions, and all of those were statutorily legal. They were within the statutory range. However, the trial court failed to include a mandatory consecutive sentencing. And in that case, the Illinois Supreme Court said, if we can just rearrange the sentences so that he is serving the total number of years, that's acceptable. But that doesn't work here for several reasons. First, the defendant in Donaldson received sentences that were within the statutory range, and in order to correct the mistake the trial court entered, in other words, to correct the void judgment, all the Supreme Court had to do was lower the sentences of each conviction. So the defendant wasn't serving any more time on either the conviction or in total number of years, and the sentences were never void. Here, the only way to fix the void judgment is to either increase the number of years on the aggravated battery conviction, something that Kayla obviously has not agreed to, or to vacate the guilty plea and allow the state and Kayla to work this out in the trial court. I would also like to point out, Your Honors, that while the aggravated batteries may seem inconsequential in light of the involuntary manslaughter charge, these aggravated batteries were important to Kayla. The first time we really have a chance to hear from her is in her post-conviction petition, because, of course, this is from a guilty plea, and so she enters that guilty plea without really any comment. But in the post-conviction petition, she explains that she's very troubled by these aggravated battery convictions and that she feels like she has a defense to these, that she shouldn't have pled guilty. And again, we have to remember that when she entered this guilty plea, she was only 16 years old. And as our brief points out, there were several problems with counsel at that time. What problems were those? Well, first, Your Honor, counsel was suffering from a per se conflict of interest, where he represented both Kayla and her entire family. And second... Was her entire family under indictment or charge of some sort? No, Your Honor. But under Austin M., counsel suffers a conflict where he serves as a guardian ad litem and defense counsel. And how did counsel here serve as a guardian ad litem? Well, he didn't serve as a guardian ad litem, but Kayla's argument... And again, this is a first-stage petition, so she only has to raise the gist of a constitutional claim here. But in Austin M., the Supreme Court made clear that a guardian ad litem need not be appointed for all criminal cases. Instead, it's only appointed when perhaps the parents are not there. So the role of the parent and the guardian ad litem are somewhat symbiotic. They have the same potential conflict. Here, counsel represented both the parents and Kayla. Could I interrupt you just for a moment? When you say that counsel represented both Kayla and the parents, from your brief, you pull from transcripts the word we. And from that, that leads you to the conclusion that counsel was representing the parents as well. But is there anything expressly contained in the record that indicates that counsel was actually acting on behalf of the parents? Well, at the very first appearance he makes, he says he is there representing Kayla Francis. And then he corrects himself and says that he's actually representing the whole family. And then he refers to Kayla's mother specifically. But the family wasn't involved, was it? No, but parents often have a very vested interest in the way juvenile determinations are made. Specifically in this case, and again, we don't have all of the details because it's a first-stage petition, so she's merely alleging the facts that she knows them. But from this case alone, we know that the parents were actually paying for defense counsel. The parents were paying for... That really doesn't matter. If you look at the facts of Austin M. And I'm familiar with them because I wrote the decision in the appellate court. The lawyer there started from the get-go saying, I'm here to be his guardian ad litem and took that role as opposed to being a defense lawyer. From the record I've seen here, the attorney hired by the family aggressively represented her as a defense lawyer in terms of negotiating the ultimate outcome. And she was looking at a long period of time and she got a pretty good deal. Well, Your Honor, it's hard to tell exactly from the record how aggressive that representation was because, again, this is only the record before the trial court. And as often happens in collateral attacks, additional records are needed to fully determine what happened. And so if this is sent back down, then Kayla would have an opportunity when she's appointed counsel to more fully develop that record. But one can see how parents and children may often have an inherent conflict when they are both being represented by the same attorney. Finances, first of all, may encourage a parent to push their child to plea negotiations when he or she is not ready. There's also the idea that a parent's outcome for the proceedings may be different than a juvenile's. Often parents want to make sure their child doesn't repeat their mistakes while the child is simply interested in acquittal. And we know from the post-conviction petition that it was the parent who had most of the conversations with counsel. It was the parent who paid for counsel and that the parent was involved in the plea negotiations. And again, this is a first stage petition, so that record hasn't been fully developed yet. But if it was sent back for a second stage, then certainly that would be available once she's appointed counsel. But taking your argument to its logical conclusion, in any JD case where the minor's family hired an attorney for the minor, there would be a per se conflict of interest. Not necessarily. I think it depends on, one, the defense counsel's position. If defense counsel is obviously accepting payment from the parent, but he does not perceive himself to be representative of both the juvenile and the parent, then in those instances that would be acceptable. Here, in his very first entry of appearance, he goes on the record and says, I'm representing Kayla and the rest of her family. And then in the guilty plea hearing, that's once again brought to the attention because he's talking about his discussions about the guilty plea, and then he goes on to talk about not his discussions with Kayla so much as his discussions with the parent and whether they understood this guilty plea. And you put those two together along with the information that we have in the post-conviction petition, and it seems that defense counsel is acting both in the interest of Kayla and in the interest of her parents. Certainly enough at a first-stage post-conviction proceeding to raise the gist of the claim. So finances alone... Did the petition that was filed claim a conflict of interest? No, it did not, Your Honor. Was that a problem? No, Your Honor, it's not. This is a first-stage PC. Kayla is not required to know the law. She is only required to plead facts that give rise to a claim. And at this point, just the gist of a constitutional claim, and here her conversations about her relationship with counsel, the inclusion of her mother's letter discussing her conversations with counsel, along with the record on direct appeal, is sufficient to raise the gist of a constitutional claim. Do you have any authority that would allow this court to consider an issue not raised in the petition? Well, it was raised in the petition, Your Honor, in the sense that she pled the facts. She said counsel refers to counsel and the parents as we. The letter indicates that whether she knew that that's what the letter indicated or not, she is pointing to the fact that counsel is ineffective, and then she's explaining all the different conversations that she had with counsel, and this should have given rise to a conflict of interest. Now, Kayla doesn't have to know the words conflict of interest. She merely has to know that there's a problem and put forth facts in the petition that give rise to that claim. And here, at the first-stage petition without benefit of counsel, she pled sufficient facts that would indicate that there was some sort of conflict going on here, that counsel had a dual representation, a hybrid representation, if you will, that he was both serving the interest of her parents and Kayla. Your Honor, if this court has no other questions? Okay. At this point, Kayla would respectfully request that this court vacate her guilty plea where her judgment was void, or alternatively, her manuscript for second-stage proceedings. Thank you. Thank you. You'll have additional time on rebuttal, Mr. Manchin. Good morning, Your Honor. May it please the court, counsel. In this particular case, the general rule that a sentence that is invalid does not require it to be void. The case law also states that if a term of a plea is invalid, it does not void the entire deal if it's not an essential part of the plea agreement. The cases I cite are different factually than the present case, but the essential legal principle is the same. If the invalid portion of the plea is not an essential part of the deal, it does not void the entire deal. And I think in this particular case, the 180 days was simply not an essential part of the whole thing. I think the essential part of the deal was that she got out of the charge of murder and she got to serve a five-year term of probation. I think that is the essential part of the deal. The term, as far as the 180 days, whether it's changed to 240 or just vacated entirely, she still has to serve the 12-year sentence for the involuntary manslaughter. So the mistake as to the 180 days is simply not sufficient under the facts of this case to require voiding the entire plea agreements. Defendant's later remorse on entering the plea in claim of innocence in her post-conviction petition does not somehow make the 180 days an essential part of the agreement. There's no indication that the defendant would not have pled guilty if that was the only thing on the table. I think that given the fact that she got the five-year probation that she just about completed and the fact that she got out of a charge of murder, it was the essential part of the deal and this mistake as to the 180 days does not void the entire agreement. With respect to the claim of a conflict of interest, as Justice Turner, you noted, this was not raised. The defendant has to do more than just set out facts and then the court has to go through those facts and say, okay, what does this fact mean? And create its own claim of a constitutional violation. Under the defendant's theory, all she has to do is say my counsel was ineffective for reasons A, B, and C. That means it would appear she now raised D, E, and F because some of those facts referring to D, E, and F are somewhere in the record or somewhere in the petition. That is simply not the law. The defendant has to do more than just throw a bunch of facts out there and expect the court to apply a legal analysis and say, okay, can some legal theory be created that would apply to these facts that might possibly give the defendant relief? And it doesn't take much to say, just saying we does not raise a conflict of interest. There is no conflict of interest just because the attorney is hired by the parent or just because the attorney represents the family in a juvenile delinquency case. There is no per se conflict of interest in that situation. The interests of the family are not so diverse that it would create an automatic rule of conflict of interest. Otherwise, just as Harris mentioned, in every juvenile delinquency case, you're going to have to appoint a separate counsel to the defendant for the minor. This is because the parent cannot hire the attorney because there's now an inherent conflict of interest because the parent can put pressure on the guy to put pressure on the kid. It's an automatic rule. If the parent pays for the attorney, there's a conflict of interest. And the case law is clear that there isn't, just because you pay for the services of an attorney, does not create a conflict of interest. People versus Moore, a potential witness to the state paid for the attorney for the defendant. No per se conflict of interest. In the interest of Stefani, the theory that parents of a minor charged in a delinquency petition may not select or retain an attorney to assist their child is contrary to the national relationship between parent and child. There's simply no conflict of interest here, and there's simply no conflict of interest raised in the defendant's petition. So there's simply nothing there for the trial court to rule upon in dismissing the post-conviction petition. So there's no need for a remand for seconds hearing or for appointment of counsel because the defendant simply did not raise the issue. She may not need to know the term of art of conflict of interest, but she has to do more than just throw out a bunch of facts and expect the court to parse through that language and parse through the record to say, okay, she didn't say this, but maybe there is a theory there that there might be a problem. I think that that is not what is expected in post-conviction petitions. The court is only required to look at what the defendant says is a problem, and if they don't raise it, it can't be raised on appeal. This is no different than a defendant saying my attorney was ineffective for not seeking to suppress my confession than on appeal saying the counsel was also ineffective for not challenging the initial traffic stop. This is a completely different theory, just because the facts dealing with the stop are also included in the petition. You're limited to what the defendant says, and the defendant said nothing about conflict of interest, so there's nothing here to be ruled upon. Are there no questions? Thank you, Your Honor. Counsel, if Kayla has already served 180 days, why isn't the sentencing error a moot issue? Because when defendants are sentenced to multiple charges at once, none of those are generally discharged until the entire sentence is discharged. Here, she's still in DOC and she will be for some time, and so until all of the charges from this particular conviction are discharged, none of them will be. More importantly, that judgment is void. Under the state's argument that this was non-essential, the really only option is to either leave this void judgment in place and sort of ignore it, or to vacate the guilty plea. Now, the state has argued that these three aggravated batteries are not essential to the total conviction. And again, the state hasn't cited any particular case that would say pleading guilty to the three class, three felonies are not essential parts of the plea agreement. And further, if these were so non-essential to the plea agreement, then why were they included? She pled guilty to four counts, and now we're saying that three of those counts are non-essential? Of course they were essential. And it's hard for any of us at this point to go back in time and to determine what was being given up on behalf of the state and why Kayla was giving up. And that is why when we enter a fully negotiated guilty plea, often the only remedy is to vacate the entire guilty plea, because both the defendant and the state entered these negotiations and formed a contract. Here, that contract was for three convictions of aggravated battery and one conviction for the involuntary manslaughter. And we don't know at that point, since the state had her agreeing to 12 years, she still pled guilty to those three, so obviously those three convictions, at least on some level, were important to the state, important enough that it was included in the plea agreement. And it's difficult for us to go back in time and determine what the state or what Kayla found to be the parties. You said the sentences haven't been discharged. What precisely do you mean by that? Well, when she's put into DOC, all of the charges, currently at least, are still showing. Now, if this court were to vacate those three judgments, then I suppose they would be discharged. But at this point, she's still being charged with three aggravated batteries, and until the full sentence is discharged, each individual piece is not discharged. In other words, if we were to vacate this and send it back down, those three aggravated batteries are no more finished than the involuntary manslaughter, unless we go back through and award time for credit served for these three convictions. But we can't do that, Your Honor, because it's a fully negotiated guilty plea. It's a package deal. They all four go together. And where three of those are void, then the entire guilty plea must be void as well. The state also argued that it's not the trial court's job to go through the record and parse out legal theories based on Kayla's facts, and that she did not raise this in her petition. But in People v. Patton, this court says that to state the gist of a claim, the petitioner doesn't need to construct legal arguments, nor even understand what legal arguments that she's raising. She simply has to present those facts in the petition. Certainly we would all prefer a record where she laid out every fact that gives rise to this conflict of interest. And she's not arguing that every time counsel is paid for by a parent, that there is necessarily a per se conflict of interest. But what she is alleging is that every time counsel represents both the parent and the child, then that is a per se conflict of interest, regardless of the financial motives involved. And because this is a first stage proceeding, it should be remanded so that she can more fully develop the record on the conflicts that existed in this case between her parents and herself when she was entering these guilty pleas. This court has no more questions. Thank you. Thank you. Counsel will take this matter under advisement and stand in recess until the readiness of the next case.